EASTERN BUILDING & LOAN ASSOCIATION, APPELLANT, V. JOHN TONKINSON ET AL., APPELLEES.

FILED APRIL 18, 1906. No. 14,272.

1. **Foreign Corporations: CONTRACTS.** A contract with a foreign building and loan association authorized to transact business in this state at the time the contract is made does not become unenforceable by reason of the failure of the association to renew its authority to transact business in the state.

2. **Contracts: USURY.** In determining whether a contract with a foreign building and loan association is usurious, it is proper to consider only such payments contracted for as are in the nature of interest and premiums on the loan.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed with directions.*

*A. W. Lane,* for appellant.

*Fred L. Sumpter* and *O. B. Polk, contra.*

JACKSON, C.

The plaintiff is a building and loan association organized under the laws of New York and a resident of that state. On September 8, 1891, it complied with the provisions of the laws of this state relative to foreign building and loan associations, and procured from the state banking board a certificate authorizing it to transact business within the state. This authority was renewed on February 5, 1892,

and continued until January 31, 1893.   In October, 1892, Adam Snyder, a resident of Lancaster county, became a shareholder in the plaintiff association and procured a loan from the plaintiff, secured by a mortgage on real estate owned by him and an assignment of his shares of stock. Upon the termination of the plaintiff's license in January, 1893, the plaintiff failed to meet the requirements of the statute and thereafter procured no authority from the banking board, such as is contemplated by law.   Snyder made the payments provided for by the terms of his contract with the plaintiff for a time, and then defaulted.   In September, 1896, a representative of the plaintiff called on Snyder, in Nebraska, for the purpose of securing, if possible, an adjustment of his loan, but it appears that Snyder was unable to make settlement and that foreclosure proceedings were likely to follow.   This fact having been brought to the attention of John Tonkinson, who is a relative of Snyder and to whom Snyder was indebted, an arrangement was entered into whereby Snyder conveyed the real estate covered by plaintiff's mortgage to Tonkinson, and for the purpose of adjusting the indebtedness secured by the mortgage Tonkinson applied to the plaintiff to become a shareholder in that association and for an adjustment of the old mortgage indebtedness by giving a new mortgage on the real estate for the unpaid balance. This application was forwarded to the plaintiff's office in New York state and was there approved.   The matter of the application to readjust the Snyder loan was presented to the Nebraska state banking board which adopted a resolution expressly authorizing the readjustment sought. Plaintiff issued its certificates of stock to the defendant Tonkinson, which, when matured, would be of the par value of $1,100.   They prepared and forwarded to Nebraska for execution by the defendant Tonkinson and his wife a mortgage on the real estate, together with an assignment of the stock contracted for by Tonkinson.   These papers were duly executed and forwarded to the plaintiff.   Authority was given by Tonkinson to apply the proceeds of the new

mortgage, $1,100, in liquidation of the indebtedness of Snyder, it having been agreed that the plaintiff would accept that sum and release the Snyder mortgage. The plaintiff canceled the Snyder papers, and they were returned to him.

The stock contract between the plaintiff and defendant Tonkinson provided for monthly payments of $6.60 on the part of Tonkinson, until the monthly payments so made, together with the dividends declared by the plaintiff thereon, should equal the par value of the stock. The mortgage contained this provision: "Now, if the above bounden John Tonkinson, or his heirs, executors or administrators, shall well and truly pay or cause to be paid in gold coin of the United States of America of the present standard of weight and fineness unto the above named Eastern Building & Loan Association of Syracuse, N. Y., its certain attorney, successors or assigns, at its office in the city of Syracuse, N. Y., the sum of $1,100 so advanced or loaned as aforesaid, in the manner following, viz: The sum of $6.60 the monthly instalment or dues on the aforesaid shares, payable as aforesaid on or before the date of said shares, and on or before the first business day of each and every month thereafter, and, in addition thereto, interest at the rate of 6 per cent. per annum and a regular monthly premium of $2.75, payable monthly from October 1, 1896, making in all the sum of $14.85 for instalments, interest and premium, which shall be paid monthly as aforesaid to said association at its office in the city of Syracuse, N. Y., until the maturity of said shares, being for such a term as will secure to said obligor the payment of the full sum of $100 on each of said shares of stock from the monthly instalments paid thereon and dividends credited thereto in accordance with the provisions of the articles of incorporation, by-laws, rules and regulations of said association, and shall also pay or cause to be paid all fines which may be imposed by said association for default in payment of said instalments, dues, interest or premium, or for default in paying any insurance premium

or taxes, hereinafter referred to, and shall also well and truly keep and perform all of the covenants and agreements herein contained and the requirements of said certificate of stock, and the articles of incorporation, by-laws, rules and regulations of said association, and any lawful amendments thereof, which said certificate of stock, articles, by-laws, rules and regulations, together with the application for said loan, are hereby made a part of this obligation, then this obligation to be void, otherwise to remain in full force and virtue." Tonkinson made payments, including the payments on stock, interest and premium provided by the conditions of the mortgage, amounting in all, as appears from the record, to the sum of $712.80, when he defaulted, and the plaintiff instituted this action in the district court to foreclose the mortgage.

The answer tendered two defenses: First, that the plaintiff was without authority under the law of this state to enter into a contract with Snyder; and, second, that the contract was usurious. In the court below the determination was that the plaintiff had authority to enter into the contract and that it was valid as against that objection; but that the contract was usurious, and the defendant was credited with the total payments made by him on the principal of the loan and decree entered for $387.20, the balance found due. Both parties appealed.

The plaintiff complains of the decree wherein it is determined that the contract is usurious, and the defendant appeals from the decree in so far as it is found that the plaintiff was authorized to enter into the contract. It appears without question that the plaintiff met fully all the requirements of the statute at the time it obtained its certificate from the state banking board in 1891, and that the certificate was renewed by the banking board; that the renewal carried with it on the face of the certificate authority to continue in business until January 31, 1893. It is urged, however, on behalf of the defendant, that at the time of the renewal the plaintiff failed to file with the banking board the statement required by sections 148a

and 148$b$, ch. 16, Comp. St. 1891, in force at that time. In support of that contention the secretary of the banking board at the time of the trial was called as a witness, and from his testimony it appears that he had then been secretary of the board for about three years and a half (the trial was in October, 1904); that he had made search for the application upon which the order of February, 1892, was based, and had failed to find it. It appears, however, from his further examination that the only record of such applications kept by the board in 1891 and 1892 was by the filing marks and indorsements on the application itself, and that if the application was lost or mislaid there would be no record in his office of any such application; that the applications were not indexed, and that some of the papers were not even marked "filed," and that there was nothing in his office to show whether such an application had been filed or not. The presumption is that the officers of the state board performed their duty, and we do not feel justified in disturbing the finding of the trial court that the evidence fails to overcome that presumption, and we conclude that at the time the Snyder loan was made the plaintiff was authorized to transact business in the state, and that his contract was enforceable. The contract having been valid at its inception and enforceable under the laws of the state, the fact that the plaintiff thereafter withdrew from the state so far as the transaction of new business was concerned would not prevent the enforcement of the contract. *Rhodes v. Missouri Savings & Loan Co.*, 63 Ill. App. 77. The transactions between the plaintiff and defendant, Tonkinson, amounted to a readjustment of the mortgage indebtedness on the real estate when Tonkinson acquired the title, and do not, in our judgment, come within the ban of the statute.

The issue tendered by the plea of usury is a troublesome one. We are convinced, however, that the plea of usury ought not to be sustained. It is urged by the plaintiff that the contract is a New York contract and that under the law of that state was not usurious. We have con-

cluded, however, to base our opinion upon another ground suggested by authority cited in behalf of the association. The contract in suit is to some extent twofold in its nature. Tonkinson first became a subscriber for certain shares of stock, upon which he agreed to pay monthly the sum of $6.60 until the payments made by him, together with the dividends declared by the company and credited to the stock, should amount to the sum of $1,100, when, in the absence of the loan feature, he would have been entitled to withdraw that sum in cash. He, however, contracted for a loan of $1,100 and secured the payment of that amount by mortgage upon real estate. He might lawfully contract to pay 10 per cent. interest on the loan, or $110 a year. What he did contract to pay was interest at the rate of 6 per cent. per annum, payable in monthly instalments, and a monthly premium of $2.75, amounting in all to $105 a year. The by-laws of the association required that, where money was advanced on loans made to its shareholders, the stock of the association held by the borrower should be assigned to the association as additional security, one share of stock for each $100 borrowed, and it will be observed from the conditions of the mortgage that the contract between the parties was that, when the stock so assigned should have matured, if the payments of interest and premium were fully kept up, the amount due on the stock should be applied to cancel the mortgage indebtedness. The question then arises whether we are justified, under the circumstances, in holding that the payments on the stock contract should be considered in determining whether the contract for the loan was usurious, as it must be conceded that the interest payments and premium provided for do not exceed the amount which the parties might lawfully contract for as interest. This identical question was before the supreme court of the United States in *Bedford v. Eastern Building & Loan Ass'n,* reported in 181 U. S. 227; 21 Sup. Ct. Rep. 597. Mr. Justice McKenna, who delivered the opinion of the court, said:

"It is claimed, however, that if the transactions between

Bedford and the association were otherwise legal they were affected with usury, and to the extent that they were usurious they were unenforceable. The contention is that in making the loan of $4,600 Bedford was required to pay a fixed premium of $460, and received only $4,140, and that this constituted usury in Tennessee. This is made out, because, it is said, Bedford was required to withdraw his stock and receipt in full, and could therefore get no benefit from future profits of the association, and, it is asserted, that thereby the loan became 'fixed and certain, and no element of contingency' remained, and the transactions are withdrawn from the principle expressed in *Spain v. Hamilton*, 1 Wall. 604, that 'where the promise to pay a sum above legal interest depends upon a contingency, and not upon the happening of a certain event, the loan is not usurious.' But the fact is not as asserted. The stock was pledged as security for the advance; and the pledge was no more a withdrawal of the stock, terminating Bedford's ownership of it, than his mortgage was an absolute conveyance of his land. It is provided in section 3, article 19, that in addition to real estate security for a loan a shareholder shall 'transfer in pledge to the association one share of the stock held by said shareholder, as *collateral security*, on all loans made by the association' to him."

The conclusion we have reached is in harmony with our holding in *Anselme v. American Savings & Loan Ass'n*, 66 Neb. 520. There the borrower was required to take out 30 shares of stock, upon which the company demanded monthly payments amounting to $18. He borrowed $1,500 upon which he contracted to pay interest at the rate of 6 per cent. per annum, payable in monthly instalments. We found, however, that 15 shares of the stock subscribed for by the shareholder in that case were required to be taken out by him and payments made thereon as a premium on the loan, and that all payments made on those shares would be retained by the company as payment of the premium, and that therefore the borrower paid, in addition to $7.50 a month interest, $9 a month premium, or a total of $16.50

a month interest and premium on the loan, something over 13 per cent. per annum; so that in determining the question of usury in that case we did not consider payments on that p⌐rtion of the stock which at its maturity would be applied to liquidate the face of the loan.

We conclude that the trial court erroneously determined that the contract was tainted with usury, and we recommend that the decree be reversed and the cause remanded, with instructions to the district court to enter a decree in conformity with this opinion.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with instructions to enter a decree in conformity with this opinion.

JUDGMENT ACCORDINGLY.